## KENNY *vs.* THE FIRST NATIONAL BANK OF ALBANY.

Where a person receives from a bank a spurious note, upon a valid claim which he holds against the bank, it does not amount to a payment, and such person is entitled to recover the amount from the bank, unless he is guilty of negligence in returning the note.

There may be negligence in two ways, either in making *discovery* of the worthlessness of the paper, or in making *return* of it within a reasonable time.

An *immediate* use of the money is not indispensably requisite; and where it is not entirely clear that prompt inspection and examination by the payee, or by parties to whom he would have been likely to pass the spurious note, would have led to a discovery of its spurious character, these circumstances are proper for the consideration of a jury, under proper instructions from the court, and are consequently more or less questions of fact.

No absolute or unbending rule fixing a specific limitation of time, can be applied to every case.

On appeal the court will assume that the circumstances properly bearing on the question of negligence were submitted to the jury as a question of fact, and were duly considered by them, and after a verdict in favor of the plaintiff, it cannot say that on the *facts proved* negligence was imputable to him.

Where the defendants, on refusing to redeem a spurious note, did not put their refusal upon the ground of negligence in the plaintiff, and on the trial they merely stated as one of the grounds of a motion for a nonsuit that the plaintiff had been guilty of *laches,* without specifying how, or in what respect; *Held* that it was doubtful whether the question of negligence in the plaintiff was before the appellate court for review.

APPEAL from a judgment of the county court of Albany county. The evidence authorized the court below to find, as questions of fact, that on the 24th of October, 1865, the plaintiff received from the defendants, a national bank, duly organized, $276, in payment of a check indorsed to

him for that amount.   The plaintiff resided in Albany, where the defendants' bank was located, and the money was paid him by one of the defendants' tellers.   There was among the money so paid him five $50 treasury notes, one of which was alleged to be counterfeit, and the action was brought to recover the amount of it, the bank having refused to redeem it upon request.   The plaintiff took the money home, put it in a package with some other money, amounting in all to $400, with a slip of paper around it, indorsed in figures the amount it contained, handed the package to his mother, as was his custom, to keep for him until he should want it, according to his own testimony.   He had no other $50 bills, and was sure he got this of the defendants.   His mother put it away, just as it was handed to her, in a trunk, and locked it up.   On the 5th of January, 1866, when, for the first time, the plaintiff examined the money after delivering it to his mother, and when, for the first time, he discovered it to be worthless, desiring to use the money, he received the package from his mother, in the same condition, in all respects, as when he gave it to her.   The plaintiff went, the same day, to the Commercial Bank of Albany, to deposit some money, among which was the $50 note in question, which was at that bank pronounced a counterfeit.   The same day the plaintiff took it to the defendants' bank, informed the officers of that fact, and requested them to give him $50 in good money, which was refused, not on the ground that it had not been returned soon enough, but on the ground that it was never paid to him at the defendants' bank ; to which fact the teller and clerks of the bank testified with a great degree of confidence.   The defendants also proved that the plaintiff, when at the bank, told the cashier that he received the bill on the 8th of December, only a week before.

There was no dispute but that the bill was counterfeit, although difficult to detect.

The plaintiff brought this action in the Albany justices' court, where he recovered the $50 and costs.   On appeal to

the county court, the judgment was affirmed, and the defendants appealed to this court.

*James Edwards*, for the appellants.

*N. C. Moak*, for the respondent.

*By the Court*, HOGEBOOM, J.  The plaintiff having received from the defendants a spurious note upon a valid claim which he held against the bank, it did not amount to a payment, and the plaintiff was entitled to recover the amount from the bank, unless he was guilty of negligence in returning the note. (*Markle* v. *Hatfield*, 2 *John.* 455.  *Thomas* v. *Todd*, 6 *Hill*, 340.)

There may be negligence in two ways, either in making *discovery* of the worthlessness of the paper, or in making *return* of it within a reasonable time.  The cases are mostly to the point of negligence after *discovery* of the worthlessness of the paper ; (*Thomas* v. *Todd*, 6 *Hill*, 340 ; *Canal Bank* v. *Bank of Albany*, 1 *Hill*, 291 ; *Simms* v. *Clark*, 11 *Ill. R.* 140 ; *Pindall's ex'rs* v. *N. W. Bank*, 7 *Leigh*, 617 ; *Townsend* v. *Bank of Racine*, 7 *Wis. R.* 195 ; 2 *Pars. on Bills and Notes*, 190, *note k* ;) though some of them speak *generally* of negligence in *returning* the paper or demanding its redemption. (*Ontario Bank* v. *Lightbody*, 13 *Wend.* 113.  *U. S. Bank* v. *Bank of Georgia*, 10 *Wheat*, 333.  *Gloucester Bank* v. *Salem Bank*, 17 *Mass. R.* 33.)  But in the last two cases the spurious notes were those of the very bank *to which they were paid*.  And it was properly held that they were bound to great diligence in discovering spurious paper of their own alleged issue. (*See Pindall's ex'rs* v. *North Western Bank*, 7 *Leigh*, 622.)  No doubt the aggrieved party must return the note with diligence after discovering the defect, to the party from whom he received it, to enable the latter to seek indemnification from others, to all of whom time may be important as well to preserve the

memory of the facts and the liability of the parties, as to trace out the history of the transaction.

But a longer time, and a more liberal rule, prevails in regard to what is *diligence* in making the discovery, and whether it be a question of fact, or of law, must vary in different cases. A private individual might well rely, to some extent, on the judgment of the officers of the bank from whom he received the paper alleged 'to be spurious, as more likely to know and to detect the character of the paper, than himself. An *immediate* use of the money cannot be indispensably requisite ; because it is frequently retained even by banks in the ordinary course of business, for a considerable time. And in the present case it is not entirely clear that prompt inspection and examination by the plaintiff, or by parties to whom he would have been likely to pass the note would have led to a discovery of its spurious character.

These circumstances are, I think, proper for the consideration of a jury, under proper instructions from the court, and are consequently more or less questions of fact. (*McGrath* v. *Hudson River Railroad Co.*, 32 *Barb.* 147, 148, 154, 155. *Ernst* v. *The Same, Id.* 164. *Bernhardt* v. *The Same, Id.* 165. 23 *How. Pr.* 169.) No absolute or unbending rule fixing a specific limitation of time can be applied to every case. And, I think, in the present case, the justice was not bound to decide against the plaintiff as a matter of law, on the question of negligence. We must assume the circumstances properly bearing on this question were duly considered by the jury ; and, therefore, we cannot say that, on the *facts proved*, negligence was imputable to the plaintiff. The defendants did not put themselves upon the ground of negligence in the plaintiff, when they refused to redeem the note. Perhaps they were not obliged to. Nor did they do so with perfect distinctness, at the trial. They moved, it is true, for a nonsuit, and they stated as one of the grounds that the plaintiff had been guilty of *laches ;* but how, or in what respect, they did not specify—whether in the original

*reception* of the spurious paper, or in *keeping it deposited* for future use an unreasonable length of time before bestowing upon it a critical examination, with a view to the ascertainment of its genuine or spurious character; or in putting it out of his *own possession* and omitting to make any *marks* upon it, as likely to lead to confusion and uncertainty as to its identification; or in not presenting it at the bank for *redemption* within a reasonable time after its receipt by him from the bank.

These considerations raise some doubt whether the question is properly here for review; but independent of them, I am of opinion that we are not in a condition to say that as a question of law, negligence was clearly established as against the plaintiff. And if we assume that the question was submitted to the jury as a question of fact, under proper instructions from the court, then the defendants are remediless, because the question of fact has been found against them.

The judgment must be affirmed.

[ALBANY GENERAL TERM, May 6, 1867. *Peckham*, *Ingalls* and *Hogeboom*, Justices.]